up for you. So, first case, Laquan Johnson v. Elaine Terry, Officer Burgess et al., 23-11394. Mr. Brigman, you have, I see that you've saved five minutes for rebuttal, but you may proceed. My name is Matt Brigman and I'm here on behalf of Plaintiff Appellee Laquan Johnson. I'd like to reserve five minutes for rebuttal. Be sure to watch the clock. And thank you very much for the opportunity to argue this case today. This case concerns claims brought by Mr. Johnson against officers at the United States Penitentiary, Atlanta under the United States Constitution in Divens v. 6 on the page 9 of your archives. Mr. Johnson's claims sought redress for injuries he suffered while in Indian today, Those claims were dismissed by the District Court on summary judgment, which concluded that Mr. Johnson's claims were barred as a result of the Supreme Court's recent decision in Egbert v. Boulay, which the Supreme Court issued after Mr. Johnson filed the missing case and after the parties had briefed summary judgment. The District Court's decision was fundamentally wrong, as applied to three categories of Mr. Johnson's claims that are on appeal today. The first set of claims are Mr. Johnson's claims for deliberate indifference to his medical needs in violation of the Eighth Amendment. The second set of claims are Mr. Johnson's claims for failure to protect in violation of the 15th Amendment. And the third set of claims are Mr. Johnson's claims for excessive force in violation of the Eighth Amendment. I'll address those claims. Did you – forgive me, but in the red brief, they point out that you're not – you seem to have not challenged the excessive force prong on appeal. And I went back – I thought I went back and looked at your brief. Are you – you've raised it in your brief? Yes. Okay. Then I may have missed it. That's perfectly all right. And I'll get to that one at the end. So I'll start with plaintiff's claim for deliberate indifference to medical needs. There were a number of claims to clarify that Mr. Johnson brought initially. The claim that he appealed with respect to deliberate indifference stems from Mr. Johnson's broken jaw and his failure to receive a prescribed liquid diet. While in custody at USP Atlanta, Mr. Johnson was attacked by another prisoner. That resulted in a broken jaw, and his jaw had to be wired shut. As a result of this procedure, Mr. Johnson was prescribed a liquid diet by an outside surgeon. Notwithstanding this directive, Mr. Johnson didn't receive the liquid diet that he was prescribed. This resulted in Mr. Johnson having to cut the wires that had wired his jaw shut in order for him to eat, which led to additional infection and the loss of a tooth, an obvious pain for Mr. Johnson. The district court dismissed Mr. Johnson's deliberate indifference claim, finding that it presented a new context from Carlson v. Green, which is the Supreme Court's foundational Eighth Amendment deliberate indifference case. As a result of that, the district court granted summary judgment in favor of defendants. This decision amounts to reversible error. Mr. Johnson's deliberate indifference claims simply do not present a new context from Carlson v. Green. Does that mean, in your view, that – how would you take that? Does any medical deliberate indifference case fit under Carlson? Well, I mean, I think here the cases are both predicated on the Eighth Amendment. It's the same class of defendants. It's prison personnel. It's the same sort of – the injury is different, but the actions which are failing to provide medical care are the same. I think that – I mean, under Section 1983, I think that's easy, frankly, but I think we'll probably all agree that the Supreme Court has not been quite as generous with Bivens, shall we say. I don't disagree with you that the Supreme Court has not been as generous under Bivens, but I still think if you look at the district court's decision, the district court ruled essentially that because the plaintiff in the Carlson v. Green case ended up dying from the injury, that is somehow different from what happened here. And I think trying to draw the line on what creates a new context based on the outcome of the mistreatment is not what the Supreme Court has said we need to do. And frankly, that creates sort of a dangerous set of incentives where a prison guard could effectively mistreat someone up to the very edge of death, but they survive, and then there's no claim, versus, you know, just mistreating them to the point of death. There's no principal reason to draw that distinction. The Supreme Court in Abbasi, though, very specifically gives some examples of meaningful differences, and really it seems to be slicing this pretty thin. A case might differ in a meaningful way because of the rank of the officers involved, the constitutional right at issue, the generality or specificity of the official action, the extent of judicial guidance as to how an officer should respond to a problem or emergency. I mean, those seem the Supreme Court is suggesting to us that we should be looking for fairly minor differences. So how is the district court wrong? I agree that there are a lot of mights in the Abbasi case. They do list out a number of different factors that might result in a case arising in a new context. I mean, the facts of Abbasi obviously implicate national security concerns. It implicates a policy setting. Abbasi itself is very different from the facts of the case here, which is a more straightforward prisoner abuse claim that is very similar to the Carlson case. So again, I think here it is in the context of prison personnel, and it is in the context of failure to provide medical treatment that was clearly prescribed to Mr. Johnson. I think that's enough to get it into the same context as the Carlson case. I'll move on to the failure to protect claim. The district court also erred in rejecting plaintiff's claim for failure to protect. The district court granted summary judgment to all defendants on that. The key issue with what the district court did on the failure to protect claim is treatment, frankly, non-treatment of the Farmer v. Brennan case. In the Farmer case, which was a Supreme Court case, the Supreme Court recognized a claim for failure to protect. The plaintiff in Farmer was a transgender inmate that was raped after being placed in the prison's general population. Here, Mr. Johnson alleges that he was attacked by prisoners that should not have been housed with him after he warned prison staff that the attack was coming. The district court didn't address Farmer. And importantly, it also didn't address the case of Caldwell v. Borden, F.C.I. Talladega, which was a prior 11th Circuit case. Did Farmer discuss the Bivens aspect of the case? I mean, the Farmer case was brought under Bivens. Right, but did the opinion talk about Bivens? Where was it brought under Bivens? Neither brief mentions it. The district court opinion doesn't mention it. The court of appeals opinion doesn't mention it. The cert petition doesn't mention it. The merits briefs in the Supreme Court don't mention it. And it was not mentioned in oral argument at the Supreme Court. So how was it brought under Bivens? Your Honor, I mean, respectfully, it was a claim brought against a Federal official under the Eighth Amendment. I mean, the only prior precedent. But nobody mentioned Bivens. Your Honor. So at most for you, it was assumed for purposes of deciding that particular case that you could state a claim under Bivens. It wasn't decided at any level. It wasn't even contended at any level. It was simply assumed. Isn't that correct? Well, it is correct, but I would add that it was a threshold issue. And if you look at Justice Thomas' concurrence in that case, I mean, his position was this. But it's not a threshold issue. I mean, you could just as easily say there was no constitutional violation here, so it doesn't matter whether there was a Bivens cause of action or not. You can't force a court to say, look, this is the threshold issue. We've got to decide that, except on jurisdiction.  And what we have is an assumption. And we've got at least three, maybe four, Supreme Court decisions explicitly stating that assumptions are not part of holdings and don't bind anyone. And we've got five that I found, 11th Circuit holdings, that an assumption in a previous case is not part of the holding of the previous case and doesn't bind anyone. Understood, Your Honor. Plus, the Supreme Court says when it's talking about this issue and Egbert and other decisions, here's our three Bivens cases, and you measure everything against them. And it didn't say, here's our four, and one of them is Farmer. No, they don't mention Farmer at all. Which means at most it was an assumption, and assumptions aren't binding on anybody. Well, the Bishopian Court in the Third Circuit did look at the issue, which is that, and admittedly, there's a circuit split. Your client's in the wrong circuit, then. Well, in this circuit, Your Honor, the Caldwell case does recognize a claim under Farmer. I mean, in the Caldwell case, it's still good law in the circuit. But it was before Egbert, among other cases. Agreed. It was before Egbert, and it has not been. And you say there's a circuit split. I'm not so sure, but what do you think? This is the final exam on your State Bar. Final question on your State Bar. What would the Supreme Court do if it had the issue of whether there was a Bivens cause of action, viable cause of action in this case? I can't speculate as to what the Supreme Court would do. You don't have to speculate. They said in Egbert, if we were called to decide Bivens today, we would decline to discover any implied causes of action in the Constitution. So if you want a case to get ruled against in the Supreme Court, this is an ideal one if you can talk us into creating or furthering a circuit split. I mean, they've told us. The only thing I'll say to that, Your Honor, is the Supreme Court, they could have overturned Bivens. They have recently shown that they're willing to overturn prior precedent. They left Bivens out there. They left Carlson out there. They left Davis out there. And they didn't mention Farmer at all. They probably thought, look, this is an IQ test for the courts of appeal. Let's see if they can figure it out when we say if we address this again, we're going to say no Bivens. Now, let's see what they do. This is an experiment. And they place a little side bet to see how we come out. I mean, come on. That may well be the case. But, I mean, as it stands now, as it stands for my client's position, and as the state of the law in the Eleventh Circuit stands, Caldwell is out there. Farmer is out there. Farmer has not been expressly overturned. My client, under the state of the law, has a right to bring a claim under date for the Eleventh Circuit. Thank you. You've actually, you've exceeded your time, but you've saved five minutes for a rebuttal. Okay. Just very briefly. Your. Sorry. Thanks. I like that way you're saying it. It's taking years to remember. Okay. I just released the court. I'm David Powell, and I represent the 13 defendants in this case. Mr. Powell, do you like an opportunity to snatch defeat from the jaws of victory? Is that what you're about to do? No, Your Honor. What do you need to add to the argument? Well, I would add that the court, in the farmer issue, there have been at least five circuits that have agreed with the district judge's decision here that the farmer only assumed a bivvage remedy. It's not a phantom fourth remedy. Those were the Fourth, Fifth, Sixth, Seventh, and Ninth Circuits. Only the Third Circuit in that pre-Egbert case, Bistrian, has held otherwise. And I could not find an opinion in Third Circuit reconsidering its Bistrian position. Your Honor. Some might wish that there were a remedy given the atrocious conduct that took place here. Do you know if your clients have been subject to any discipline? Your Honor, I don't know if they've been subject to any discipline, but issues such as this are referred to Internal Affairs for investigation. Prisoners are not told of the outcome. And the alternative remedy discussion was in the macro instead of the micro focus. They said if Congress or some properly delegated agent of Congress has decided that this can be remedied by an administrative remedy, for example, that's enough. Not whether this person had it remedied in an administrative procedure. Correct? That's correct, Your Honor. The Supreme Court cautioned that we should not review it too granular a level. We're concerned with whether it's proper to make a remedy against the whole field of similar government officials, not just this particular official. But these particular officials did not protect Mr. Johnson, which led to outpatient jaw surgery and his needing to cut surgical wires, holding his fractured jaw together with fingernail clippers so he could eat. That sounds like a problem, doesn't it? Well, Your Honor, it's not whether there was a violation. The question is whether the court should create a remedy. The Supreme Court has made clear that that's now a disfavored judicial function and that the court should not create a remedy if there are any special factors and if there are any meaningful differences, which there are here. So although a jaw injury is a serious injury, that would not be grounds without going through the analysis to create a remedy. And there are other special factors here, too, though. The plaintiff filed for habeas corpus relief and sought for injunctive relief concerning if he felt that he wasn't getting his proper treatment while his jaw was wired shut. And the administrative remedy procedure, he had multiple steps there where he could have visited the issue with the regional office or the central office. There may not be a constitutional remedy here, but I'm going to have time putting the blame on Mr. Johnson for what happened. Your Honor, as far as putting the blame, I don't know if that would really be a question in the case as to whether he was responsible for getting his jaw broke or not. No, I don't think that is a question, but it just seemed that maybe that was what you were suggesting. No, Your Honor. It's just that we were only suggesting that under Egbert, the court is not to weigh the equities in a case. The question is whether the court is . . . if the court is better suited than Congress to create a remedy. And in almost all cases, the answer to that is no. In an ideal world, or semi-ideal world, the remedy would go against the employer. And here, of course, the problem which led to the creation of Bivens is that the employer is absolutely immune, under sovereign immunity. And therefore, the only way to get it is to go after the agents. And with the expectation that the employer will, as a matter of grace, make good the agents, or perhaps provide for insurance for the agents. And that's why we get into this strange situation. Well, Your Honor, I disagree slightly because there is the FTCA remedy available to inmates for negligence. And this court, in an unpublished opinion in Farrington, indicated that both the administrative remedy provision and the FTCA are alternative remedies available to inmates. There may have been a reason why that was unpublished. That's true, Your Honor, because previously in the original Bivens cases, the court did address that the FTCA and Bivens at that point were considered parallel. But the review has changed under Abbasi through Egbert now that we don't, the court no longer looks at whether there's no remedy if we don't create one. The court looks at whether we, rather than Congress, are best fit to create the remedy. Your Honor, I would add that as far as the excessive force claims, that was not argued in the brief, in the principal brief in this case, as we pointed out in our response brief. So those claims really are waived in this case. And also on the failure to protect claims, the two individuals against whom those claims are asserted retired almost a year before the Broken Jaw incident occurred. And that would be a rise under the Eighth Amendment. But they simply were not federal employees any longer and could not have violated Mr. Johnson's rights at that time. And as Judge Carnes, as you noted, the court can, if it finds there was no constitutional violation by the employees, the court would not even have to determine whether there is or is not a Bivens remedy on those claims. So with that, Your Honors, we, the defendants ask the court to affirm the district judge on all accounts and rule in the defendant's favor. Thank you. Mr. Brickman, you have five minutes. Thank you, Your Honor. Just very briefly, I want to address the excessive force claim and the special factors. Mr. Powell is right that we did not argue that the excessive force claim fell in the same context as prior Bivens claims. We agree that it is a new context. But we did appeal the district court's decision that special factors counseled against expanding Bivens here. And in particular, because there is an order issued by the district court after discovery that has not been cross-appealed in this case in which the district court said the defendants, the very defendants in this case, prevented Mr. Johnson from accessing the alternative remedies that may have been available to him. The district court ruled that at USP Atlanta during this time that the alternative remedial process that was set out by Congress for the prisons was unavailable to Mr. Johnson. And I think that is a critical fact that at a minimum the district court should be required to reanalyze. Because it is creating, I mean, if you think about the policy concerns here of a situation in which prison staff can shield themselves by pointing to an administrative remedy process that they themselves have been found to have prevented Mr. Johnson from accessing is problematic. And in a way, you could argue that allowing claims to proceed in that very narrow context, I mean, this is a unique situation. There's none of it, at least I'm not aware of any prior cases in which a court has ruled that the defendants in a case prevented the plaintiff from accessing the alternative remedies. Okay. So, and just as a point, so on your statement of issues, and I'll certainly go and review the brief, but you, number one, whether the district court erred in holding that a failure to protect claim, whether those claims are no longer viable after Egbert. Number two, whether the district court erred in holding that Johnson's medical indifference claims are meaningfully different from those in Carlson. And three, whether the district court erred in holding that the BOP's administrative remedy process counsels against expansion of Bivens claims. So, back to my question, when you were first standing up here, what do we do with your argument that you have appealed the excessive force piece? Well, again, and if the brief was not as clear as it could have been, I apologize. If you don't make the argument in the blue brief, you've waived it. We made the argument that the district court erred in its special factors analysis by not finding that regardless of whether Mr. Johnson's claims fell under Bivens, Davis, or Carlson, that special factors do not counsel against expanding Bivens here. And we viewed that as applying to all three of Mr. Johnson's claims. I'll certainly go back to book, but. Understood, Your Honor. But that was the last point that I wanted to make, was that this is sort of a narrow context. Mr. Johnson is in a somewhat unique situation, and that the alternative remedies, which was the sole reason that the district court determined that the Bivens remedies should not be expanded here. She didn't discuss any other special factors counseling against expansion other than the fact that he had these alternative remedies against him. But that order was frankly internally inconsistent with the prior order, finding that these alternative remedies were made unavailable to my client. I guess I'm not sure how that's inconsistent. We've already talked about the fact that Egbert is talking about the availability of the remedy as a whole, not whether or not in that particular case it ended up being available to the plaintiff. That's right. I think it is a unique factor here that the defendants in this case were responsible for preventing my client from accessing that alternative remedial structure. I think that's different than prior precedent, but understood. That is all I have, unless there are further questions. Thank you very much for this. Thank you both. We have your case under advisement. I'll give you all a chance to get set up, but I'm going to go ahead and call the second case.